NATHAN APPLEBEE, Plaintiff in Error, *v.* MOSES RUMERY, Defendant in Error.

ERROR TO LASALLE.

An action will lie for deceit and warranty in the sale of a horse; no matter what the consideration to be paid was, or whether it was paid down or not.

THIS was an action on the case, brought by the plaintiff in

error against the defendant in error, in the LaSalle Circuit Court. There was a trial by jury, and a verdict for the defendant below. The plaintiff below brought error

The facts and pleadings are sufficiently stated in the opinion of the Chief Justice.

The cause was heard before HOLLISTER, Judge, in the Circuit Court.

GRAY, AVERY & BUSHNELL, and J. B. RICE, for Plaintiff in Error.

GLOVER, COOK & CAMPBELL, for Defendant in Error.

CATON, C. J. It would be very difficult to account for this verdict, but for the sixth instruction given for the defendant. With that instruction, the jury could not find a verdict for the plaintiff on the second count. This count was for falsely warranting the horse to be sound, when he knew him to be unsound. The horse had a discharge from the right nostril, which became the subject of much discussion during the trade. At the negotiation a fortnight before the trade was finally made, the plaintiff asked the defendant to warrant the horse to be sound, but this he refused to do, assuring the plaintiff, however, that the symptoms manifested proceeded from a cold which the colt had recently taken. A fortnight afterwards when the defendant took the colt to the plaintiff's stables, the discharge at the nose still continued, and was the subject of general remark, the defendant still insisting it was but a cold, while several expressed the opinion that it was the glanders. It was in reference to this discharge at the nose, that the defendant *warranted* the horse to be *all right*, and upon this warranty the plaintiff took the horse, and agreed to pay two hundred dollars for him, in one and two years, for which he gave his note. There is no dispute about the terms of the warranty. Mr. Judd testified, "Rumery says the colt is all right, and I will warrant him to be all right. Applebee said, on those terms I will take the colt." There is nothing to contradict or impeach this testimony, but on the other hand it is corroborated very strongly, by the testimony

19

of Patterson who was present during the negotiation, to whom the defendant stated that he would warrant the horse *against everything that was wrong.* Indeed the jury was not at liberty to say there was no warranty. Nor can it hardly be said that the horse did not die of the disease which was at that time manifest in the right nostril, whether it was true glanders or some other disease of the head or nose. Such a disease had prevailed among the horses in the immediate neighborhood of the defendant, where this colt was raised, for some considerable time, which had been quite fatal, though some horses had recovered from it. Mr. Cusic, a horse farrier residing in the same neighborhood, seems to have treated many of the cases, and some of them successfully. He thinks it was not glanders, but it was certainly a disease very prevalent and of which many horses died, and was undoubtedly within the terms and spirit of this warranty. Mr. Cusic says, he had treated fifty cases of this disease, all in this neighborhood, as is manifest from his testimony. He was called upon professionally to attend to this case. He says : " I doctored the colt in controversy in the spring of 1860, before the sale to Applebee, and saw the colt every few days while he was running at the nose, up to the time he was sold. *I told Rumery he had about the same disease the other horses had.*" Now if this is true, there is no escaping the conclusion that this horse was diseased, and that the defendant knew it. He knew of the prevalence of the disease in the neighborhood, his colt had the symptoms of that disease, and he was told by his professional adviser, in whose judgment and skill he had so much confidence that he placed so valuable a colt as this in his hands for treatment, that the colt had this same disease, and the result showed that the professional opinion was correct. In the face of this light and knowledge, he insisted to the plaintiff that the colt only had a cold, from which he would recover in a few days. Even though he believed that the veterinary surgeon was mistaken, honesty and fair dealing required that he should have stated fairly and fully that he had received this professional opinion from the horse doctor, and it was a manifest fraud if he did not, sufficiently so, to

render the defendant liable in an action on the case for the deceit alone, independent of any warranty.

This is the sixth instruction given for the defendant: "The plaintiff cannot recover, upon the second count of the declaration, unless it is proved that Applebee bought the horse in question of the defendant, and at the time of the purchase, paid the defendant $200 cash down for the horse."

The averment in the count is this: "And the plaintiff did then and there buy of said defendant said last mentioned horse, for a certain large sum of money, viz., the sum of two hundred dollars." The gravamen of the action was the deceit and warranty, and the amount to be recovered was not the money paid, but the depreciation in value of the horse, in consequence of the disease, and it was no matter, whether the consideration was more or less than two hundred dollars; or whether it was paid down or not. Nor does the mode of the averment make it material. It is under a *videlicet* and consequently need not be proved as laid. The amount, mode or time of payment is not material; so as the sale was upon a sufficient consideration to sustain it. The giving of the two promissory notes was a sufficient consideration; nor could the defendant defeat the right of the plaintiff to recover, by showing that the notes were still in his hands unpaid; though it may be that he might, upon a proper notice, bring the notes into court and offer to surrender them in mitigation of the damages to that extent, but we will not now affirm that even this could be done.

The judgment must be reversed, and the cause remanded.

*Judgment reversed.*