Argued April 20, reversed May 26, 1914.

## HOFFMAN v. TOFT.*

(142 Pac. 365.)

**Fraud—Elements—Damages to Person Defrauded.**

1. Where plaintiff has been induced by the fraud of defendants to give his promissory note for worthless corporate stock, and the defendants have negotiated the note to an innocent purchaser, plaintiff has suffered damages entitling him to recover for the fraud, though the note is not yet due.

[As to action to recover for false representations, see note in 18 Am. St. Rep. 555.]

**Pleading—Demurrer—Admissions.**

2. An allegation of the complaint that one of the defendants was an agent of the corporate defendant and its officers and conspired with them in the sale of the corporate stock to plaintiff must, for the purposes of a demurrer to the complaint, be assumed to be true.

[As to stockholders' subscriptions as affected by fraud, see note in 3 Am. St. Rep. 824.

From Multnomah: WILLIAM N. GATENS, Judge.

Department 2.    Statement by MR. JUSTICE BEAN.

This is an action by J. L. Hoffman against John F. Toft, Joseph L. Gawley, W. M. Dillenbeck, John F. Shorey, and Colombian Timber Company, a Washington corporation, and this appeal is from a judg-

*The right to maintain an action for damages for fraud in securing bill or note not yet due, see note in 52 L. R. A. (N. S.) 944.

REPORTER.

ment dismissing the complaint and action, following an order sustaining a demurrer to the complaint.

The plaintiff alleges in his complaint, in substance, that the defendant corporation was organized under the laws of the State of Washington, and maintained an office in Portland, Oregon; that the defendant Shorey was president thereof, defendant Gawley, vice-president and general manager, and defendant Dillenbeck secretary and treasurer; that all the defendants concerted and confederated to cheat and defraud the plaintiff, and induced him by fraudulent statements and representations to purchase capital stock of the defendant corporation of the par value of $5,000, for an agreed consideration of that amount; that in payment for the stock plaintiff executed to the corporation his negotiable promissory note for $5,000, dated August 7, 1912, due one year after date; that immediately after the note was executed it was negotiated for value to one Thomas Farrell, who, as plaintiff is informed and believes, is an innocent purchaser of the same. It is further alleged that the corporation and the defendants Shorey and Toft indorsed the note and received the proceeds thereof; that plaintiff is solvent and financially responsible; that payment of the note can be enforced against him at maturity.

The alleged false representations consist of the following matters: The officers of the corporation caused literature, including a prospectus to be used by the agents and officers of the corporation in soliciting subscriptions of stock, to be prepared and printed for distribution for the purpose of inducing the public generally to invest in the capital stock of the corporation. W. E. Douglas, as agent of the company, was authorized and directed by its officers to exhibit the prospectus to the plaintiff to the end that he might be

thereby induced to purchase and pay for some of the corporate stock. It was represented by the defendants and shown by the prospectus that the corporation owned a large logging equipment consisting of "one 45-ton standard Baldwin locomotive; 6 Western logging cars; 2 donkey engines, heavy type, completely equipped; 32,940 feet of 45-pound steel rail; 1,500 fish plates; 5 kegs railroad spikes; 100 brace chairs for track rails"; that the company also owned the contract for logging the property of the Fearon & Martello Company, the value of which could not be estimated, but which, no doubt, would run into millions of dollars; that the company would engage in the business of logging mahogany and Spanish cedar timber under and by virtue of a logging contract which it held covering upward of 5,000,000,000 feet of timber located in Colombia, bordering upon and tributary to Lake Zapatosa, and lying from 3 to 5 miles from the Magdalena River, which is navigable for nearly 500 miles above this property; that the contract provided that the Colombian Timber Company should receive $50 per 1,000 feet for all mahogany and Spanish cedar timber delivered to the Fearon & Martello Company; that the timber company offered for sale 50,000 shares of its treasury stock, fully paid and nonassessable, at par value of $1 per share; that the funds realized from the sale of its stock would be used to install its machinery and to commence actual operations of logging and shipping under the terms of its contract.

It was further alleged that the defendant John F. Toft was at the same time acting as the agent of the corporation and its officers in the sale of the corporate stock; that he introduced Douglas to the plaintiff, and, concerting and conspiring with him and the other defendants to induce the plaintiff to purchase the cor-

porate stock, represented to the plaintiff that he knew
Douglas well; that the latter was reliable, and that
whatever he said could be depended upon; that Toft
had carefully examined into the said proposition of
the corporation, its properties and the value thereof;
that it owned the properties so represented in the
prospectus to be owned by it; that Toft had invested
of his own money in the corporate stock in the con-
pany the sum of $5,000, and that it was worth the par
value thereof; that plaintiff relied upon all such repre-
sentations and statements, and believed them to be
true, and was thereby induced to, and did, purchase
such capital stock; that all the statements and repre-
sentations so made and relied upon by the plaintiff
were false and untrue, and known by the defendants
to be false when they were made, or were made reck-
lessly and wantonly and without knowledge that the
same were true; that the defendant corporation was
not the owner of any property at any time, and that
its capital stock was absolutely worthless; that the
defendant Toft never invested $5,000, nor any sum,
in the capital stock of the corporation; that the com-
pany did not have any valid and enforceable logging
contract with the Fearon & Martello Company of New
York, nor with any other person or corporation, but
had a mere right to obtain a contract, which right has
never been perfected; that all right under such pre-
liminary option would expire on the 26th day of the
month of the filing of the complaint; that the corpora-
tion had no assets whatever, either in the way of real
property, contracts, logging equipment, office furni-
ture, or anything else, outside of the corporate records
and corporate seal; that no part of the proceeds of
such note were used or ever intended to be used by
the defendants to install machinery or to commence

operations of logging and shipping; that by reason of the facts alleged, and because of the wrongful conduct of the defendants, plaintiff has been damaged in the sum of $5,400, the principal sum of said note, and the interest for one year.

The defendants demurred to the plaintiff's complaint for the reason that the same does not state facts sufficient to constitute a cause of action, asserting in support thereof, in pursuance of a rule of the trial court, that the note is not yet due, and that the plaintiff has not been called upon to pay the same, and that by reason thereof the plaintiff has sustained no damage. The plaintiff assigns error in the trial court sustaining the demurrer to the complaint.

REVERSED AND REMANDED.

For appellant there was a brief over the names of *Mr. A. E. Clark* and *Mr. Malcolm H. Clark,* with an oral argument by *Mr. A. E. Clark.*

For respondent, John F. Toft, there was a brief over the names of *Mr. Walter G. Hayes* and *Messrs. Manning, White & Hitch,* with oral arguments by *Mr. Hayes* and *Mr. Sam White.*

For respondents, W. M. Dillenbeck, John F. Shorey and Colombian Timber Company, there was a brief with oral arguments by *Messrs. Christopherson & Matthews* and *Mr. C. R. Thompson.*

No appearance for respondent, Joseph L. Gawley.

MR. JUSTICE BEAN delivered the opinion of the court.

1. It is contended by the defendants, as in the lower court, that the plaintiff has not been damaged, and

consequently not defrauded, for the reason that he has not yet paid the note executed for the corporate stock. This position is untenable. To illustrate: Let us suppose that the plaintiff had exchanged a valid $5,000 note of another person, or had traded real or personal property for the corporate stock. It would not for a moment be contended that the plaintiff, under the circumstances alleged in the complaint, was not damaged thereby. The allegations show that the promissory note executed by the plaintiff to the defendant corporation was a valid obligation in the hands of an innocent purchaser, and was of the value of $5,000. The plaintiff is in the same position as though he had given his note for that amount to a bank and paid the money to the defendants.

2. It is asserted on behalf of the defendant Toft that he was never an officer or director in the defendant corporation. The complaint, however, alleges that he was at the time acting as the agent of the company and its officers, and conspired with them in the sale of the corporate stock. The complaint, for the purposes of the demurrer, must be assumed to be true. The plaintiff became liable and the wrong was complete upon the execution of the note for the worthless stock and the transfer thereof to an innocent purchaser for value. It is true, as quoted in the defendants' brief from the case of *Mobile & Montgomery Ry. Co.* v. *Felrath,* 67 Ala. 189, that:

"Mere fraud without damage gives no cause of action; the two must concur before an action will lie, and it is as necessary for a party complaining to prove the one as the other."

This principle is not questioned. Fraud is alleged in the complaint, as is also the damage, to wit, the liability of the plaintiff on a $5,000 note, with interest,

in the hands of an innocent purchaser for value. After the plaintiff was defrauded out of his note in the manner alleged in the complaint, he was not required to sit supinely by until he had paid the obligation and the alleged perpetrators of the fraud, or a portion of them, had changed conditions or departed for green pastures, and further complicated matters. Indeed, if this were the rule, the state would be an inviting field for the sale of worthless · stock. It is claimed by the defendants that before the plaintiff can recover he must return the note transferred by the defendants to a third party. A sufficient answer to this contention is that the plaintiff does not possess the note; therefore he cannot return it. Neither did he negotiate it to an innocent purchaser. Granting the claim of defendants in this respect would be paving the way for one person to defraud another, taking a negotiable instrument for the amount, and then for the wrongdoer to render himself immune from action by simply indorsing the note to an innocent purchaser for value. Such a proceeding cannot be sanctioned. The only thing that can plausibly be claimed that plaintiff should return is the worthless stock, and there is no controversy about that. In *Applebee* v. *Rumery,* 28 Ill. 280, 283, an action for damage for fraud in the sale of a horse to the plaintiff, it appeared that the plaintiff had given two promissory notes for the purchase price, neither of which had been paid either at the time the action was brought, or at the time of the trial. The same contention was made that is presented by the defendants in the case at bar. The court said:

"The amount, mode, or time of payment is not material, so as the sale was upon a sufficient consideration to sustain it. The giving of the two promissory

notes was a sufficient consideration; nor could the defendant defeat the right of the plaintiff to recover, by showing that the notes were still in his hands unpaid, though it may be that he might, upon a proper notice, bring the notes into court and offer to surrender them in mitigation of the damages to that extent; but we will not now affirm that even this could be done.''

The case of the *Metropolitan Elevated Railway Co.* v. *Kneeland,* 120 N. Y. 134, 140 (24 N. E. 381, 382, 17 Am. St. Rep. 619, 8 L. R. A. 253), arose in this manner. The defendants were officers and directors of the plaintiff corporation, and fraudulently caused certain obligations of the corporation which were negotiable to be issued to themselves, which they negotiated to innocent purchasers before maturity. The plaintiff brought an action based upon the theory that the defendants could be held for damages by reason of the fact that through their fraudulent acts they had caused the negotiable obligations of the plaintiff to be issued and negotiated to innocent purchasers, and thus fraudulently imposed upon the plaintiff a liability to pay the same at maturity. None of the obligations had been paid at the time of the trial. The defendants demurred to the sufficiency of the complaint for the reason that it did not appear that the plaintiff had paid any of the obligations, and that there was no allegation of loss. The Court of Appeals, in reversing the judgment of the lower court, among other things, said:

''This is an action against the directors of a corporation for fraudulently issuing and negotiating promissory notes in its name, which, on reaching the hands of *bona fide* purchasers for value, became legal obligations against the company. The substantial question presented by the demurrer is whether such an action can be maintained upon an allegation of liability

to pay without an allegation either of payment or of actual loss. In an action for the conversion of a promissory note by wrongfully negotiating it to a *bona fide* holder for value, the maker need neither allege nor prove that he has paid it, but it is sufficient if he avers that he is legally liable to pay it: *Decker v. Mathews,* 12 N. Y. 313. The *gravamen* of such an action, as was held in the case cited, is the wrongful act of the defendant in causing a note without value, except to a *bona fide* holder, to become valuable by the sale thereof to such a purchaser as could enforce it against the plaintiff. It was also held in that case that a cause of action accrued to the maker as soon as he became liable upon the note through the transfer thereof, and that neither the right of action nor the measure of damages depended upon the fact of payment. This case was relied upon by the court when it rendered judgment in *Farnham* v. *Benedict,* 107 N. Y. 159, [13 N. E. 784], where the defendant, being in possession, without title, of certain town bonds that had been fraudulently issued through his procurement, and which were void in fact, although apparently valid, sold them to *bona fide* purchasers, and thus rendered them valid and binding upon the town, so that it was compelled to pay them. It was held that he was liable to the town for the amount of the bonds, and Judge Rapallo, in speaking for the court, said that immediately on the negotiation of the bonds a cause of action accrued in favor of the town, either in the nature of an action of trover for the face of the bonds, or as for money had and received, for the money realized by him on the sale, according to the rule laid down in *Comstock* v. *Hier,* 73 N. Y. 269 [29 Am. Rep. 142]. In *Thayer* v. *Manley,* 73 N. Y. 305, the defendant, by means of false and fraudulent representations, induced the plaintiff to execute and deliver to him three negotiable promissory notes, but before any of them became due the plaintiff demanded them from the defendant, who refused to deliver them. He still held the notes at the time of the trial, but one of them had become due after the com-

mencement of the action. It was held that, as the defendant had it in his power, when the suit was commenced, to dispose of the notes to a *bona fide* holder, in whose hands they would have been valid, and as the plaintiff was then entitled to recover the actual damage which might accrue to him, this right was not impaired by the subsequent maturity of one of the notes before a transfer; that, as the judgment and a satisfaction thereof would transfer title to the notes to defendant, plaintiff was entitled to recover the full value; but that to avoid circuity of action a provision should be incorporated in the judgment giving to defendant the right to cancel and return the notes as a satisfaction of the damages. It was also held that the measure of damages in such an action is the face of the note and interest, unless it should appear that it was of less value by reason of payment of the same, insolvency of the maker or some other lawful defense"—citing *Betz* v. *Daily,* 3 N. Y. St. Rep. 309, and *Town of Ontario* v. *Hill,* 33 Hun, 250.

In *Stearns* v. *Kennedy,* 94 Minn. 439, 443 (103 N. W. 212, 213), the action was brought for damages sustained by the plaintiff as the result of fraud practiced upon him in the sale of land which he purchased upon contract. The major part of the purchase price remained unpaid at the time of the action as well as at the time of the trial. The defendant contended that the plaintiff could not maintain an action for damages until he had made all the payments stipulated by the contract. The Supreme Court of Minnesota, in denying this contention, said:

"The payment of the balance of the purchase price of the land was not a condition precedent to the plaintiff's right to maintain an action for damages for the alleged fraud. It is true, as the defendant suggests, that the plaintiff may never pay the balance of the purchase price, and the defendant may be compelled to take back the land; but this contingency does not

70 Or.—32

affect the plaintiff's cause of action, which became complete when the contract was made, $1,400 on the purchase price paid, and the fraud discovered: *Applebee* v. *Rumery,* 28 Ill. 280; *Weaver* v. *Shriver,* 79 Md. 530 (30 Atl. 189). Again, the plaintiff, by his contract, covenanted to pay the balance of the purchase price of the land, and all of it which became due before the commencement of the action was paid, and there is no suggestion in the pleadings or the evidence that he is not solvent; hence equitably, as well as legally, he has a right to prosecute this action."

See, also, *Davison* v. *Farr,* 18 Misc. Rep. 124 (41 N. Y. Supp. 170–172); *Nashville Lbr. Co.* v. *Fourth National Bank,* 94 Tenn. 374 (29 S. W. 368, 45 Am. St. Rep. 727, 27 L. R. A. 519, note); *Decker* v. *Mathews,* 12 N. Y. 313; *Oliver* v. *North. Pac. Transp. Co.,* 3 Or. 84, 87; 8 Am. & Eng. Cyc. Law (2 ed.), 647. It was error to sustain the demurrer to the complaint.

The judgment of the lower court is reversed and the cause remanded for such further proceedings as may be deemed proper, not inconsistent with this opinion.　　　　　　REVERSED AND REMANDED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE EAKIN and MR. JUSTICE MCNARY concur.