(18 Misc. Rep. 124.)

DAVISON v. FARR et al.

(Supreme Court, Special Term, Essex County. September, 1896.)

BILLS AND NOTES—INDORSEMENT PROCURED BY FRAUD—REMEDY AGAINST MAKER.
    Where an indorsement of notes is procured by fraud of the maker, and the indorser voluntarily pays them before due, he can at once sue the maker.

Action by Charles M. Davison against Ward & Co. for money paid by him as indorser on notes of defendant. Defendant and Marcia Farr, a judgment creditor of defendant, moved to vacate a warrant of attachment. Denied.

J. W. Houghton, for the motion.

E. T. Brackett, opposed.

McLAUGHLIN, J. The plaintiff brings this action to recover the amount of certain promissory notes indorsed by him for the accommodation of the defendant, upon the ground that his indorsement was procured by reason of false and fraudulent representations made to him by the officers of the defendant as to its solvency. The notes were not due at the time the action was commenced. Immediately prior to the commencement of the action the plaintiff (the notes being held by a bona fide purchaser) voluntarily paid them, and returned the same to the defendant, and demanded from it the amount which he had paid. Upon the complaint and affidavits showing the falsity of the statements upon which plaintiff relied when he indorsed the notes, and that defendant was about to fraudulently dispose of its property, the plaintiff applied for and obtained a warrant of attachment. After the warrant of attachment had been granted, and a levy made thereunder, one Marcia Farr recovered judgment against the defendant. The defendant and Marcia Farr make this motion to vacate the attachment.

In disposing of the motion, it being made on the same papers upon which the attachment was granted, the court must assume that all of the allegations of fact contained in the complaint, as well as those contained in the affidavits, are true. Assuming these facts to be true, does the complaint state a cause of action? If it does, then I think the motion must be denied, because in every other respect sufficient facts are stated to give the court jurisdiction. The facts necessary to maintain an action of this character are well recognized. Plaintiff must allege in his complaint, and prove upon the trial, that the representations made to him were not only false, but that they were made by defendant, with knowledge of their falsity, for the purpose of inducing him to indorse the notes, and that he, in reliance upon such statements, and believing them to be true, did indorse, and in consequence sustained the injury complained of. The complaint, in order to state a cause of action, must allege "representation, falsity, scienter, deception, and injury." It does allege all of such facts, unless it be the latter,—"injury." Assuming all of the facts stated in the complaint to be true, has the plaintiff been injured?

Has he suffered any damage?　None of the notes were due at the time the action was commenced, and can it be said, until the notes fall due, and his liability has been fixed, that he has been damaged in any way, even though his indorsement was procured by fraud?　A correct answer to this question is not difficult, when the contract between the indorser and the bona fide holder of commercial paper is understood.　It is that the indorser will pay the paper when due, if it is presented to the maker, payment refused, and notice given to him of nonpayment.　This he obligates himself to do.　This is the liability which he incurs,—a liability which originates when the paper passes into the hands of a bona fide holder, and which terminates only when the paper is paid.　The holder is a creditor of the indorser, and the indorser a debtor of the holder.　That the paper is not due, and that the liability of the indorser is contingent, makes no difference.　"A party," says Judge Allen (Young v. Heermans, 66 N. Y. 384), "bound by a contract whereof he may become liable to the payment of money, although his liability be contingent, is a debtor, within the meaning of the statute avoiding all grants made to hinder or delay creditors."　When the notes which the plaintiff indorsed passed into the hands of a bona fide purchaser for value, he thereby became liable to pay them, and this liability is of itself sufficient damage to enable him to maintain this action.　The injury to him is the fraudulent imposition of liability.　In Decker v. Mathews, 12 N. Y. 313, the court held that an action could be maintained for the conversion of a promissory note against a person for wrongfully negotiating it to a bona fide holder for value, and that the maker of the note, in order to maintain the action, need not allege or prove that he had paid it, but it was sufficient if he alleged that he was legally liable to pay, and that neither the right of action nor the measure of damages depended upon the fact of payment.　And in Thayer v. Manley, 73 N. Y. 305, where defendant, by means of false and fraudulent representations, induced the plaintiff to execute and deliver to him negotiable promissory notes, but, before any of them became due, plaintiff demanded them from the defendant, who refused to deliver them, and at the time of the trial still held them, one of them in the meantime having become due, the court held that as defendant had it in his power, when the suit was commenced, to dispose of the notes to a bona fide holder, in whose hands they would have been valid, the plaintiff had sustained damage to that extent, and was entitled to recover the full value of all the notes.　In Betz v. Daily, 3 N. Y. St. Rep. 309, in an action by a partner against his co-partner and others for fraudulently making notes in the name of the firm, and negotiating them, so that a bona fide holder could compel the plaintiff to pay them, the court held that the cause of action was complete when the wrong was done, and that payment of the notes was not essential to a recovery.　And in Town of Ontario v. Hill, 33 Hun, 250, defendants were held liable for wrongfully issuing negotiable bonds of a town; the court holding that the cause of action accrued immediately upon the passing of the bonds into the hands of a bona fide purchaser, who could enforce them against the town.　In Railroad Co. v. Kneeland, 120 N. Y. 134, 24 N. E. 381, action was brought for fraudulently issu-

ing and negotiating promissory notes; and the question was distinctly decided that the action could be maintained upon a simple allegation of liability to pay, without any allegation either of payment or actual loss.

Applying the principle laid down in the foregoing authorities, is there any doubt that the plaintiff has been damaged, and that the same is sufficiently alleged in the complaint? I think not. The plaintiff has become liable to pay. He incurred that liability by reason of the fraud practiced upon him by the defendant. That he, under such circumstances, must sit quietly by until the liability—contingent though it be—can be legally enforced against him, before he has any remedy against the perpetrator of the fraud, is, to my mind, a proposition without reason, without authority, and contrary to every principle of fair dealing. The law is not so powerless to redress wrongs. He has an immediate right of action.

But there is another view in which this action can be sustained. Fraud vitiates every contract, and one who has been defrauded in entering into a contract can insist that the other party to the contract shall cancel it. The plaintiff, having discovered the fraud practiced upon him, immediately paid the notes, returned them to the defendant, and demanded the amount which he had paid. Defendant having refused to pay the same, the plaintiff can maintain this action to recover.

The motion is denied, with costs.